The first case on our docket this morning is Agenda No. 17, No. 128-731 Shawnee Community Unit School District No. 48-84 v. Illinois Property Tax Appeal Board et al. Now I'm informed that the athletes will be splitting their time equally. If you are prepared to proceed, counsel for the appellant. Good morning, Your Honors, and may it please the Court. I'm Scott Ginsberg on behalf of Shawnee Community Unit School District No. 84. At issue in this case is whether the Property Tax Appeal Board could enter an order revising the property tax assessment and ultimately issuing a property tax refund when the taxpayer that was receiving the refund in the revised assessment failed to pay its taxes within 60 days and ultimately those taxes were sold by a judicially ordered tax sale. The undisputed facts that are relevant to this case are generally straightforward. The Grand Tower Power Plant is a large 570 megawatt power plant in Grand Tower, Illinois. In late 2013, the current owners, the taxpayers here, acquired the plant in a portfolio sale as part of public utility company Amarans leaving the market of Illinois. As part of that sale, the owners acquired the property, and at that time the property had an assessment that was about $33.4 million. Under Article 16, the taxpayer exercised its right to appeal that determination, appeal that assessment to the Jackson County Board of Review, which it did, and ultimately the Board of Review granted it a approximately $2 million reduction to about $31.5 million. The taxpayer filed its PTAB appeal, and then several months later the taxes came due. In about October 15, 2015, the owner failed to pay those taxes, and then on January 14, the taxes were ordered sold by the Circuit Court for Jackson County. Counsel, would you agree that there are two methods by which the taxing can be challenged? Do you agree with that? I agree there are two avenues which a taxpayer— So we have Article 16, and then we also have Article 23. Is that correct? I agree that Article 23 provides processes for appealing an assessment, and Article 16 and Article 23 both provide processes by which a taxpayer may challenge an assessment, yes. And when we look at the plain language of those two articles, which one applies here? I believe both apply here, Your Honor. I believe that Article 16 applies to objections to taxes generally, and I believe—excuse me, Article 23 applies to objections to taxes generally, and that encompasses any objection to any property tax for any reason, for any year. And then Article 16 provides processes and procedures for taking the administrative route to appeal those assessments to the Property Tax Appeal Board. That's not to say that Article 23 doesn't also cover Property Tax Appeal Board objections. It clearly does. The plain language of Article 23, Section 23.5 reads, Beginning in 1995, in all counties that are not cooked, if any person desires to object to all or any part of a property tax for any year, for any reason, other than that property is exempt from taxation, he shall pay all the tax due within 60 days from the first penalty date of the final installment of taxes for that year. Did GTEC pay the taxes within 60 days of the Jackson County Circuit Court entering the judgment? No, Your Honor. What's the effect of GTEC's failure to pay? Well, the taxes were sold in a judicially—ultimately, they were sold in a judicially ordered tax sale. But the effect here, for purposes of whether they could pursue the assessment relief of the Property Tax Appeal Board, is that the Property Tax Appeal Board lost subject matter jurisdiction under Article 23-5, which sets forth a jurisdictional statement that anybody who wants to object to all or any part of any property tax for any reason must pay the taxes due within 60 days. But the taxes were paid by a third party. Is that correct? The taxes were paid by a third party. That's correct. Counsel, let me follow up on a question by Justice Holder-White. Could the parties elect to proceed under Article 16 or Article 23? At the time that they—that's a tricky question because Article 23 includes provisions that are applicable to the Property Tax Appeal Board. But they could have, within 30 days of receiving their Board of Review appeal, filed an appeal application with the Property Tax Appeal Board under Article 16. But they still are subject to certain provisions of Article 23, including the fundamental requirement that they pay their taxes due. Where in Article 16 does it say that they must pay pre-pay if they're proceeding under Article 16? Can you point that out to me? Pre-pay? What do you mean pre-pay? Well, you said they must pay their—I misspoke. They must pay their taxes within a certain amount of time in order to proceed under Article 16. Is that what you said? That's what I said. Tell me where—show me where in Article 16 that that—that it says that. Sure. In Article 16, it references—well, it's—it's buried in there, but it states that a taxpayer shall file a petition with the clerk of the Property Tax Appeal Board setting forth the facts upon which or he or she bases the objection. I'm talking specifically about paying the taxes before they can—they must pay it within a certain amount of time before they can proceed. Where does it say that? It doesn't say it specifically in Article 16. If it doesn't say it specifically, does it say it generally? How—where does it say that in that article? Well, it—it says it—it—it's our position that Article 23 covers objections to taxes generally. Well, that may be your position, but I'm asking you specifically about Article 16, and I would like to know where in that article it says something about paying the full amount before you can proceed. The language that it—the express language it has with respect to the timeliness of tax payments states that if it—that— Counsel? Yes. Do you want to concede that that specific language is not in there and that your position is basically we should read into Article 16 the language from Article 23? I believe that our—my position is that Article 23 covers the objections that are filed under Article 16. You know, for example, so the appellate court's holding here is that Article 23 applies to objections in the circuit court. So you don't concede that the language is not in Article 16? It—it's not spelled—there's nothing in Article 16 that says a taxpayer must pay taxes due within 60 days. That language is not present. I believe that language was covered by Article 23 in Section 23-5, which states that any objection to any tax for any reason. So if someone elects to proceed under Article 16, do they have to apply the language from Article 23 if they're not proceeding under Article 23? Well, it's our position they are proceeding under Article 23, but— But just say hypothetically your opponents say they're not proceeding under Article 23. Yes, in a careful reading of Article 16, you see that. Article 23, in my opinion, provides the beginning and the end for tax objections generally. And there are off-ramps here. For instance, if you look at 23-5, the section that we've been focusing on, there's an exception for exemptions. It says any person that pays the taxes due, any person that wishes to object other than persons wishing to object for an exemption. Well, by my reading of that, that means that objections under Article 16 are included because objections to exemptions are covered under Article 16. And then they're ultimately adjudicated by the Illinois Department of Revenue, who is basically the same as the PTAB. You go to the Board of Review for an initial decision, and then you go to the Department of Revenue for ultimate adjudication. And that's covered under Article 16. So with that in mind, look at 23-5. It says any person who files an objection for any year for any reason other than exemptions. Well, if these aren't covering exemptions too, then why say other than exemptions? You know, we don't even know what, you know, ultimately the Fifth District held that the decision, that Article 23 only applies to objections in circuit court. We don't even know what objections in circuit court we're talking about. The term objection comes up in the property tax code, by our math, about 75 times. It uses the language interchangeably with protest, appeal. There's defenses. They all cover, generally, the ability to object to taxes. And Article 23-5 states when you object to taxes for any year for any reason other than the property tax is exempt from taxation, you must first pay the tax due. You must pay the tax due within 60 days. Is it your position, then, that if the party's elected to proceed under Article 16, they must also proceed under Article 23? It sounds like that's what you're saying. Under Article 23-5. Not Article 20. Article 23-5 covers the general. Article 23-5. Yeah. You're saying they must proceed under both. They don't have the option to proceed only under Article 16. Is that your argument? I'm saying that anyone who proceeds under Article 16 is also proceeding under Article 23. Whether they elect to do so or not, just by operation of law, they're also proceeding under Article 23. Yeah, because they're filing an objection to taxes. And objection is the term used in Article 16 for the PTAB authority. It's saying if you file a petition, you must state the facts upon which you base the objection. Do you have any authority for that? Can you cite a case that says that that's a requirement? I think Madison 2 v. Pappas, the Supreme Court ruling that, you know, we've been circling the wagons around this footnote. And in the footnote, it states that although the payment of tax isn't a prerequisite to filing an objection, the tax must still be paid. And that, in my opinion, is the court's way of saying that the tax payment requirement does apply to PTAB appeals. And, of course, there's something for both sides to like on that footnote. It first says there's a tax payment isn't a prerequisite for filing an appeal. But then it says if the tax falls due, when the tax falls due, the tax must still be paid. Now, you know, but taking a step back, look at what this court in Madison 2 was actually doing. Why were they making that footnote? What was the context? It was very similar to the facts and the issues that were raised here. In that case, the Property Tax Appeal Board under Article 16 provided for intervention and said taxing districts may intervene in PTAB cases, whereas the circuit, the code under Article 23, 10, and 15, you could not appeal, you could not intervene. It was silent on that matter. Excuse me. And the objectors in that case stated, well, the silence in the circuit court and the expression of legislative intent in the PTAB, well, that's an indication that the legislative intent was to keep intervention out of the circuit court. And they said the reason for that was that the appellants, the taxing districts, don't really have any interest in these proceedings. And the Supreme Court, looking to the PTAB's provisions for guidance on how to handle the circuit court provisions under Article 23, said the tax objectors claim that taxing districts have no real interest in the outcome of the assessment proceedings is flatly inconsistent with these provisions. Looking at the PTAB, they said to exempt it would therefore require our court to reject the determination that the legislature has already made and which it had the right to make. So there, you know, again, the taxpayers were arguing. Silence in one place and express language in the other place meant exclusion of the condition in there. And the Supreme Court rejected that, looking to the big picture, the legislative intent, which is that taxing districts are the persons ultimately affected by these decisions. And, of course, they have a right. And how do we know the legislative intent for the right? Because it was in the PTAB's portion of Article 23 and the Article 16 that follows that. May I ask you a big picture question? I'm not as fluent in the tax code as perhaps I will be at some point. But your argument seems to be this one section covers all objections, a very broad statement here. That's what we've been struggling with because we can't see the specific language that you're talking about. But it's very clear the legislature created two distinct paths for a taxpayer to challenge their evaluation, right? And I don't really understand that. What is the legislative intent? Why are there two different paths? How are they different? And with that, I understand that. Would that help us understand the question that you're raising here about what happens when taxes aren't paid but a taxpayer pays them? What's the big picture? Why would a taxpayer file under one rather than the other? Sure. I think you can find some of the answers into this in the Civic Federation's amicus brief. I disagree with the ultimate argument they're trying to make, but they do provide a nice legislative history. And what the legislative history of the property tax code under Article 23 is you had to jump through a number of arbitrary hoops. You had to come up with this fictional letter of protest, and you had to pretend that you're paying your taxes voluntarily, but you're not. And it goes to the tax bill, and you're raising defense. So what they did is they came up with a much simpler way of doing things. There's a lot of talk about the PTAB is meant to be a less burdensome process, and that's why the PTAB should not require taxes or doesn't require taxes. But no, they were just setting up an administrative agency to dispense with all those hoops that you were having to jump through. No longer do you have to go to the courthouse on the tax sale day. So now you have this administrative agency and the act of protest there instead of this fictional letter that is a form that has some antiquated language. Now all you have to do is file a PTAB appeal and state your objection there, and that's your objection. That's the objection under 23-5 that demonstrates the payment under protest, which, again, I've mentioned in my brief several times. 23-20, just a few sections later, calls protest. And that's what we're talking about here, this payment under protest. Call it a doctrine. Call it a policy. Call it a guideline, whatever you want to call it. Couldn't the legislature, as you are explaining, came up with a more simple way to avoid having the taxpayers jump through all the hoops that you were just referring to? Couldn't they just as easily have included the language that you are asking us to read into that section into the new legislation that stopped all the hoop jumping? Couldn't they have just included that language? Then we wouldn't be arguing about this because it would be there in black and white, right? Well, they kind of did, but they also included the section. Well, kind of did usually is not what I'm looking for in terms of looking at a statute. Is the language there or isn't it there? The language that requires the taxpayer to pay their taxes before they – Yes. Under Article 16, it is not present. It does not say that. When you apply Article 16 to its necessary end, you go back to – My question is much more specific. Yeah. If the legislature was trying to simplify things, as you say, and make it easier, that would have been an easy step to include that language in the new legislative statutory scheme that simplified the process. I believe that it was such a fundamental requirement that the legislature – legislative intent was for Article 23 on that point to continue to apply despite the fact that there is an alternative administrative agency. Is there any language in any statute that provides while the case is pending before PTAB, the taxpayer is excused from paying taxes? While the case is pending. Before the administrative agency. They've got to pay the taxes. Well, that was the Supreme Court's holding in the footnote of Madison 2 v. Pappas where it says if the tax falls due while the appeal is pending, the tax must still be paid. Okay. You know, with the few minutes I have left, I would argue that the judicially ordered tax sale equally divested the Property Tax Appeal Board of Jurisdiction over these taxes. Here we have the situation where all of the bundle of rights to the taxes on this property through the tax sale process were ultimately included in this tax sale process. This sale tax – this tax record that was ultimately subject to a circuit court order asking that the taxes be sold, and then that order was entered. So at that time, the taxes were subject to a circuit court order finding the taxes to be correct. And at that point, a tax buyer came in and they purchased the taxes, at which point they had what they believed to be the merchantable right to redeem those taxes and ultimately foreclose on that property. There is a – you know, following the appellate court's finding to its logical end, what you're ending up here is a situation where here taxes were paid several years later, right before the foreclosure of the property and the judicially ordered tax sale. And at that point, they were able to redeem the taxes. But what if they hadn't? What if somebody else had come through with a tax deed because they had purchased this property? Under the reading of the law that the appellate court – which is the law of the land now because this is the only time this has been addressed by the courts – if somebody purchases and forecloses on a property in a judicially ordered tax sale, there's also a PTAB proceeding happening. If a PTAB order is a reduction, ultimately finds that the petitioner, the appellant in the PTAB case, was awarded a refund or that the assessment was incorrect, now we have a tax sale court order saying it was correct. We have a PTAB order saying it was not correct. We have a new buyer on the property. You're just buying a lawsuit. Now, the purpose of the tax sale process – Bring your remarks to a close. Oh, I'm sorry. I apologize. I see that I've not reached the rest of my time. I'll reserve any further comments for rebuttal. Thank you, Your Honors. Thank you very much. Mr. Turner, you will be taking 10 minutes. Good morning, Your Honors. Counsel. May it please the Court, I'm Christopher Turner, the Assistant Attorney General representing the appellee, the Property Tax Appeal Board, I'll refer to as PTAB. This Court should affirm PTAB's final administrative decisions that reduced the Grand Tower Power Plant's 2014 and 2015 tax assessments because the plain terms of the property tax code did not require Grand Tower to pay the contested taxes under protest as a condition to continue pursuing its administrative appeals before the PTAB. And because the circuit court tax delinquency judgments and tax sales did not divest PTAB of jurisdiction over those appeals. Now, the school district points out that no court has ruled yet whether or not the code – of course, except for the appellate court below – that the code does not require taxpayers to pay the contested taxes under protest to pursue a PTAB appeal. But that is only because, to PTAB's knowledge, and I think to all parties' knowledge, no party before the school district in this case has ever raised such an interpretation or reading of the code. Either that the payment under protest requirement applies to PTAB appellants or that a tax delinquency judgment would divest PTAB of jurisdiction over a pending appeal. Rather, both this court and the appellate courts that have addressed those mutually exclusive tax alternatives for taxpayers to contest their taxes, which Your Honors have pointed out, they have always described them as the payment of protest requirement applying to the judicial tax proceedings, not to the PTAB alternative. That is, one, the taxpayer can file an appeal with PTAB, or two, they can pay the tax under protest and then file a tax objection in the circuit court. This is because under the code's plain terms, that is clear. As counsel has essentially now conceded, there is no provision in Division IV, Article 16, and that's the part of the code that covers the PTAB appeals and procedures for PTAB appeals. None of those refer anywhere to a payment under protest requirement or require the payment of contested taxes. Instead, the district tries to rely on Section 23-5 in Article 23 that governs judicial tax objection proceedings. But when you read those provisions as a whole, that very provision they rely on, Section 23-5, and in conjunction with the other related provisions that specifically reference it, it is clear that that payment under protest requirement only applies to the judicial proceedings and to the filing of a tax objection complaint in the circuit court. As the school district points out, 23-5 provides that any person who desires to object to the property tax should pay the contested tax within the deadline. But then they leave out the second sentence that clarifies that when the taxes pay, quote, in compliance with this section and a tax objection complaint is filed in compliance with Section 23-10, 100 percent of the taxes should be deemed paid under protest, end quote. So it spells out specifically that this payment requirement is for the filing of a tax complaint under Section 23-10. And you can go. That is the next provision in Article 23 that governs the filing of tax objection complaints in circuit court. There's some argument that objection is a pretty broad term. It could mean an objection in either the circuit court or before PTAB. No, Your Honor. We actually think the nomenclature is not just if this court has used it and other courts have consistently used it. It is appeal. The proceedings before PTAB are an appeal. The proceedings in a judicial proceeding have always been called a tax objection. That is consistent with that in Article 23. Article 23, if you go through each of the sections, they're all about the circuit court proceedings for contesting your taxes. And it consistently uses the term objection. On the other hand, if you go into Division 4 of Article 16, the one I referred to, it consistently refers to the proceedings before the PTAB as an appeal. Counsel points out, I think, in the brief to two times it refers to objection, and one of them is very important. That is, their reading, Section 16-160 precludes their reading of Section 23-5. The only time that any of the provisions in Division 4 of Article 16 refer to 23-5 is when it says that a taxpayer who files a petition for appeal with PTAB is, quote, precluded from pursuing – I'm sorry. Let me make the exact quote here. Precluded from filing tax objections based upon valuation as may otherwise be permitted by Section 21-175 and Section 23-5. So the only time that the PTAB provisions refer to 23-5 is to define the alternative judicial proceedings that a PTAB appellant cannot proceed under. So it identifies – clearly identifies the preeminent under-protest requirement as part of the judicial proceedings and precludes PTAB appellants, at least taxpayers like Grand Tower, from proceeding under that provision. Therefore, the reading just – it actually contradicts the plain language of the code. And you should look – also, as I was going to point out, Article – if you look at Section 23-10, it explicitly refers to 23.5 to incorporate it as a precondition to filing a tax complaint, right? It immediately says that a person paying the taxes due as provided in Section 23-5 may file a tax complaint under this provision. That is – it is – it spells out that it is a precondition to filing a tax objection complaint. And there's only one other provision that does. And it's outside of Article 23. It's the Section 21-175 that governs tax delinquency judgments. And then when you go to that provision, it also immediately says that the circuit court can only entertain a defense to the taxes if – and a tax objection complaint is filed under Section 23-10. So the legislature was clear. When it wanted to have the payment under protest requirement to apply to certain proceedings under a certain section, it said so. It said it very specifically. And those three provisions, 23-5, 23-10, and 21-175, all work together to set out the payment under protest requirement. Nothing in the PTAC provisions does anything like that or even suggests it. To the contrary, it says that you cannot proceed. It prohibits you from proceeding specifically under Section 23-5. Counsel did point out to – there is a provision within Section 185 of the PTAC provisions, that's Section 16-185, that says the extension of taxes shall not be delayed by an appeal. And that only means, as what this court has already pointed out, is that you still have to pay your taxes under the regular enforcement provisions, like any other property owner and the collection provisions. Your late payment, if you don't pay, will still be subject to interest on top of it, penalties and fees, especially once you have a tax delinquency judgment, significant penalties and fees. And ultimately, if you do not redeem your property, if you redeem those taxes and pay the taxes with all those fees on top of it, you could lose your property entirely. I see my time is almost up, so unless the court has questions, I also wanted just to mention that with regards – that the district alternatively tries to rely on the circuit court tax delinquency judgments and tax sales to argue that they divested PTAC jurisdiction, but they face the same problem. They identify no provision in the code stating that delinquency judgments impact PTAC appeals in any fashion and no authority ruling that is the case. It cites various provisions in Article 21, most of them directing the tax collector basically to carry out basic functions and applying for it and sending out the application for the tax delinquency judgment, but none of them certainly say – none of them refer to PTAC at all, and none of them say that a PTAC appeal would be divested of jurisdiction. And this is especially important because property tax statutes generally are construed in favor of taxpayers, and this court recognized in the Millennium Park Joint Ventures case that all parties have cited in their briefs, that the property taxes may only be levied, assessed, and collected in a manner expressly spelled out by statute, but there's nothing referring to PTAC or divesting PTAC of jurisdiction at all. To the contrary, as I pointed out before, Section 21-175, governing tax delinquency judgments, says that the court can't even entertain, can't consider defenses. It can't adjudicate a matter unless the property owner has paid the tax under protest under 23.5 and filed a property tax complaint under 3.10, which the code specifies if you're a PTAC repellent, you can't do that. It says specifically you can't do those things. So the court, the tax collection court, never requires any jurisdiction or authority at all about the question of a disputed tax and the valuation of the property underlying that tax that is already the subject of a PTAC appeal. Now, the district has also pointed out they've made many policy arguments to this court here on the concerns for the school district and the financial prices they've paid. But as we pointed out in the briefs, at least with regard to the years at issue here, 2014 and 2015, whatever late payment happened, the fact that Section 23.5 does not apply to the taxpayer, that did not affect whatever their financial crisis was. Because a taxpayer stepped in in 2014 and paid those taxes in full within a couple of business days of the deadline under Section 23.5. And this is exactly the judgment that the legislature made, that it was willing to rely for purposes of PTAC appeals on the normal tax collection procedures. Your Honors, for the reasons I've given today and set forth in our brief, we ask that you affirm the PTAC's final administrative decisions. Thank you. Thank you, Mr. Turner. Mr. Flom, you will have ten minutes as well. May it please the Court, Stephen Flom on behalf of Grand Tower Energy Center, LLC. Counsel for the appellant was repeatedly asked, where in Article 16 can we find a provision which says that a PTAC appellant has to pay the tax in order to maintain its appeal? And the answer, I think we eventually heard it, was it's not there. And that's fatal to the appellant's case. Because probably the most fundamental tenet of tax law is that taxes can only be levied, assessed, and collected as expressly spelled out by statute. That's a fundamental tenet that this Court first announced in the People v. Sears case in 1931. It was reaffirmed as recently as the Millennium Park case in 2010. In the absence of any express provision, requiring payment means that there is no such provision. But beyond that, we know that the General Assembly has made it clear in the express language of the property tax code that it intended and contemplated that a PTAC appellant was not required to pay the tax. Mr. Turner alluded to one of the places where we see that. Part of Section 16160, which says that if you take a PTAC appeal, then you are precluded from filing objections based on valuation under, among other things, Section 23.5, the very section that the district is relying on to claim that there is a payment obligation. And that's excluded expressly from PTAC appeals. But 16160 is even, I think, significant even more so because it expressly says that a PTAC appellant cannot object under Section 21-175 to the entry of judgment. Why is that so important? 21-175 is the tax judgment. It relates to properties that are on the delinquent list, properties whose taxes have not been paid. And the only reason why, and so therefore in a PTAC appeal, the General Assembly was expressly contemplating a situation where the taxes were not paid and they were telling the PTAC appellant, you can't go into circuit court and object to the entry of judgment under 21-175. You don't have to pay, but judgment gets entered against you, which is exactly what happened in this case. So the General Assembly expressly contemplated and intended that a PTAC appellant could find themselves in a situation where they didn't pay the tax because they didn't have to. Judgment still gets entered under 21-175. There's one other provision that I'll mention in the property tax code, which also expressly evinces the General Assembly's intent that a PTAC appellant is not required to pay the disputed tax. And that's section 16-185. Again, Article 16, PTAP appeals. And that says if the decision of PTAP reduces the evaluation, then the tax shall be abated, or if it's been paid, it shall be refunded. If it's been paid. That provision expressly demonstrates the General Assembly was contemplating a situation in a PTAP appeal where the tax had not been paid. And when that's the case and the evaluation gets reduced, then there's an abatement. The obligation to pay is eliminated. And what's interesting about that language, shall be abated, or if paid, shall be refunded, is that that same language appears in five other provisions of the property tax code. And in each one of those provisions, it involves situations where the taxpayer was not obligated to pay the tax in question. And under fundamental principles of statutory interpretation, when the General Assembly uses a phrase in one provision and in multiple provisions, we construe it to have the same meaning. So, for example, under Section 23, there's five sections where this is the case. And the first one is administrative protests under Section 8-35A. That relates to department assessments. There's a limited range of properties the department assesses itself, railroad property, pollution control property, coal scrubbers. If you challenge the department assessment, you don't have to pay the tax. And if the assessment gets reduced, the language is right there. It shall be abated, or if it's been paid, it gets refunded. 8-35B, administrative protests from a department decision on an exemption application. Again, it's clear you don't have to pay the tax when you're seeking a determination of exemption from taxation. That's been the law in our state forever. And 8-35B specifically says that if there's a determination by the department in an administrative protest from a department decision denying it would be an exemption application, but if they change their mind on an administrative review or an administrative protest, excuse me, then again, the tax shall be abated, or if it's been paid, it shall be refunded. No obligation to pay in that situation. Other examples are Sections 15-25, which has to do with removal of exemptions by the Department of Revenue, 16-70, and 16-130, which have to do with review of Board of Review decisions in connection with exemption applications. In all five of these situations, the Department of Revenue uses the same language that they did in 16-185, and they did it in situations where the taxpayer was not obligated to pay the tax. And that same interpretation applies to 16-185. The General Assembly intended that there was no obligation. They set up this separate remedy. Chief Justice Feist, you asked about why do we have the PTAB remedy. It was created in 1967 to help folks downstate. There was a feeling that they weren't getting a fair shake. And the only procedure that was available to them at that time, which was what was called the specific objection to the entry of a tax judgment. And so this separate state procedure was set up. There would be more uniformity. There would be more fairness. And it was a completely separate regimen. And even when the specific objection got superseded, essentially, by the new circuit court tax objection procedure, which was instituted in 1985, pursuant to Public Act 89-126, it's very interesting. There's separate procedures with a range of different options, features. There's some advantages. There's some disadvantages. We lay out the differences on pages 49 and 50 of our brief. And one of the many differences has to do with the duty to pay during the pendency of the appeal. But there are other differences too, fundamental differences, like can the valuation be increased, not just decreased? It can in PTAB. Watch out. Burden of proof is different. And is there a de novo review? Is there preponderance of the evidence? That's the case in PTAB. In the circuit court, you've got clear and convincing evidence. So, yeah, it's a separate, completely separate procedure. The General Assembly meticulously decided what was supposed to apply in terms of these comprehensive options the taxpayers have. And they made it clear, as had always been understood since 1967, that you didn't have to pay tax in connection with a PTAB appeal. And so we may wonder, well, why has it taken us, you know, so many years for there to be decisions that specifically address this? I think the reason is pretty clear. Up until 1995, the section that the district is relying on, section 23-5, specifically said that if you desire to object under section 21-175, then you pay the tax under protest. You pay the tax and you pay it under protest. When they created the new circuit court tax objection remedy in 1995, they deleted that phrase under section 21-175. So before then, before 1995, no one could have ‑‑ I'm not sure the argument is that plausible now, but you couldn't have made the argument at all relying on 23-5 before 1995. So the question is, when they deleted that, what was the General Assembly trying to do? Were they suddenly trying to move the procedure under tax objections into PTAB? And the answer is clearly no. On page 5 ‑‑ Mr. Plowman. I'm sorry. Please bring your remarks to a close. I'm sorry. Thank you. We'd ask the court to assure. Thank you. Counselor Nabella. May I ask you a question about standard of review? Yes. I know that brief is beginning to be in the way. Should there be any deference paid to the PTAB's interpretation of its own statute? My reading of the case law is that courts are split on that, that there's deference paid to administrative agencies on issues that fall within that agency's area of expertise. Here, my opinion is that there should be little or no deference given to the Property Tax Appeal Board's determination that the tax need not be paid to pursue the PTAB appeal, and here's why. Their basis is based on an interpretation of a provision of the statute which they agree with the 5th District doesn't apply to them. So there's no real indication that they've ever given this much thought. As pointed out in the brief by IASA, the school association, they found that the PTAB's website actually states the contrary to be true, that to the extent they had thought about it before this case came up, they're instructing taxpayers on their website, and it's still there as of when I checked this week, that says you must pay your taxes. Similarly, the Department of Revenue has authority over this determination, and the Department of Revenue's website likewise, as pointed out in the IASA brief, states that taxes must be paid. Moreover, you know, the legislative intent argument that they've been making is that, you know, it's the very first requirement of the tax code's tax objection proceeding under Article 23, which does, if you look at the language of that article, the title is adjudication for tax objections, not tax objections in circuit court, tax objections. Similarly, the... Can you respond to the argument that was made that objection is a term of art, a specific term of art versus an appeal, that the structure of the architecture draws a line between those two terms. Is that correct? It's not correct. It's a trade speak argument. It's saying that we property tax attorneys, we in the trade, we consider a shorthand word for saying circuit court objections are tax objections and PTAB appeals are PTAB appeals. There's nothing in the code that really supports that. As a matter of fact, in the article, the one directive where the legislature has spoken on this in Article 16, they call PTAB appeals objections, state the basis for your objection. Similarly, Article 23, Section 23-20, includes the property tax appeal board objections and refunds. This is an argument I still kind of get a chuckle out of. It says effective protested payments, refunds. This is 23-20. And then the first thing it says, the first sentence is, no protest shall prevent or cause to be a delay in distribution of taxes. So first sentence is, don't delay taxes. Second sentence, if the final order of the property tax appeal board of a court results in a refund to the taxpayer, refunds shall be made from the collector from funds remaining in the protest fund. So in the section on payment under protest, first they're saying you have to pay your taxes without delay, and second they're saying PTAB. And it's under the same section, protested payments connects with 23-5, the one that I've been arguing applies to PTAB appeals. That's called payment under protest. So what are payment under protests? If you look at 23-20, it kind of defines them as PTAB refunds. And again, we looked up 75 instances of the use of the term objection, and that includes objections in PTAB cases. It includes objections in Department of Revenue cases. It includes objections in other outlandish ways of collecting certificate of errors and other things. And that's why, again, the Fifth District's decision doesn't really help us with guidance as to what 23-5 covers. All we know is it doesn't cover PTAB appeals. And, you know, there's a lot of argument about the legislative intent. The legislature intended this to be the case. And in order to find that, you've got to go deep into Article 16 and the microscopic terms. One of them says that the taxes, if already paid, shall be refunded. But if not, they shall be abated. Well, as we pointed out in our brief, there's a nine-month lag. In this case, there was a nine-month lag between when they filed their PTAB appeal and when the decision was – when the taxes were due. So the abatement option would have come in if they could have come up with a decision within that nine months. I think that would have been very difficult in this case. But as pointed out in the Attorney General's brief, PTAB appeals were not initially designed to deal with large power plant cases involving this kind of impact to the taxing district. They're for the residential – you know, the design was for residential downstate taxpayers. And it's plausible there that you could get a decision within nine months. And if that was the case and you hadn't paid your taxes yet, and there was an order from the PTAB saying the assessment was wrong, then the taxes shall be abated. Otherwise, under 23-5, if you object to any tax for any year for any reason, the tax must be paid. You know, there was a policy argument that, you know, the taxes were ultimately paid and all this is just, you know, the school district raising an alarm that didn't really happen. But it's important to note that the taxpayers continue to withhold taxes currently. They paid their taxes for a couple years, and then the 5th District entered their decision, and they again stopped withholding taxes. This is – you've got to understand what it's like to be a school district in a town like this that has no source of revenue, and the taxpayers withholding taxes. You don't know – you can't do anything. You don't know – you can't bargain. You don't know what your revenue is going to be. You can't plan for the future. You certainly can't concentrate your effort on the children that you're supposed to be educating, providing them – Counsel, is that a record? Yes. We asked the court to take judicial notice of this fact in response to the taxpayer. They went at length to argue that we're crying, you know, the sky is falling and that this isn't a real issue. But we're asking the court to take judicial notice. There's pending litigation on this right now, and the legislature had to come in with emergency legislation twice in a row now to make up for the shortfall, else the school would not be able to pay its teachers or educate its students. So we are asking the court to take judicial notice of this fact. It's docketed in the briefs. There's a complaint where the school district is in litigation trying to recover these taxes against this taxpayer and also legislation. So you're asking us to take judicial notice of the litigation, or you're asking us to take judicial notice of the facts that you were just speaking about, the condition and the circumstances that this decision has put the school district in? We're at both, Your Honor. The litigation is the part that the court should take judicial notice of. It's a public proceeding involving the same parties. And also the special legislation that the school district had to receive to supplement the funding to make up for the taxpayer's failure to pay the taxes, which account for about half the tax base here. So you had not previously asked us to take judicial notice of the, I guess, what you were talking about, you know, the position it puts the school districts in, and they can't do this. I think I laid that all out in our reply brief and cited authority for the court to take judicial notice of that. Finally, there is an issue with the fundamental tenet of tax law, being that any requirement to pay taxes must be expressly indicated by the legislature. But it's important to emphasize that that's not what this is. This is whether or not the taxpayer can get a refund if tax is already paid. And I think the briefs have gone to great length in their analysis of the voluntary payment doctrine to demonstrate that under Illinois law, the right to a refund is not the same as the right to a tax. While the right to tax does need to be clearly expressed, there is no right to a refund. The refund is a legislative creation and what the courts have described as a privilege. That's why the voluntary payment doctrine existed in the first place, because taxpayers that paid their taxes voluntarily, even if they disagreed with those taxes, could not recover those taxes. So to say now there's a right to this refund that they're getting is contrary to all the other arguments that they've been making about whether or not there is a right to a refund. It's a different line of cases, and the argument really doesn't fly as soon as it's tested under their own arguments. With that, unless there are any other questions, Your Honors, I appreciate the time and the interesting questions, and I thank you very much. Thank you, Councilors, all, for your spirit of argument. Agenda number 17, number 128731, Shawnee Community Unit School District number 84, versus Illinois Property Tax Appeal Board at all, will be taken under advice. Thank you very much.